**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

**SAU #59, Winnisquam Regional**
**School District**

                                Case No. 09-cv-168-PB
                                Opinion No. 2009 DNH 152

**Lexington Insurance Co., et al.**


### O R D E R

Plaintiff Winnisquam Regional School District has filed a motion to remand claiming that the court lacks diversity of citizenship jurisdiction over this action because Winnisquam shares New Hampshire citizenship with several corporate defendants.  To resolve Winnisquam's motion, I must construe 28 U.S.C. § 1332(c)(1), the diversity statute's corporate citizenship provision.

Section 1332(c)(1) provides in pertinent part that "a corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business . . . ."  The defendants at issue are based in Pennsylvania but they were originally incorporated in New Hampshire.  Long before this action was commenced, the defendants were re-domesticated as Pennsylvania corporations.

Winnisquam argues that the re-domestication process does not affect the defendants' status as New Hampshire citizens because re-domestication does not change a corporation's place of incorporation.  Alternatively, Winnisquam argues that defendants remain New Hampshire citizens even if they changed their state of incorporation through re-domestication because § 1332(c)(1) makes a corporation a citizen of any state in which it "has been" incorporated.  Neither argument has merit.

The first argument fails because it is quite clear under New Hampshire law that a re-domesticated corporation ceases to be incorporated here upon completion of the re-domestication process.  N.H. Rev. Stat. Ann. § 405:63 provides in this regard that "[a]ny domestic insurer may, upon the approval of the commissioner, transfer its domicile to any other state in which it is admitted to transact the business of insurance, and upon such transfer shall cease to be a domestic insurer, and shall be admitted to this state if qualified as a foreign insurer." Although Chapter 405 does not define the term "domicile," a related chapter dealing with the rehabilitation and liquidation of insurers defines an insurer's "domiciliary state" in pertinent part as "the state in which an insurer is incorporated or organized . . . ." N.H. Rev. Stat. Ann. § 402-C:3.  This

-2-

definition supports the view that because re-domestication transfers domicile, it also transfers a corporation's place of incorporation.  Moreover, as Winnisquam concedes, both New Hampshire, the state of original incorporation, and Pennsylvania, the state of re-domestication, treat the defendants in all respects as Pennsylvania corporations rather than New Hampshire corporations.  Under these circumstances, the only reasonable way to construe the re-domestication process is as a process by which the defendants' place of incorporation was transferred from New Hampshire to Pennsylvania.

Winnisquam's second argument turns on the meaning of § 1332(c)(1).  Because the drafters of the this section used the present perfect tense when explaining that a corporation is deemed to be a citizen of any state in which it "has been" incorporated, it is possible to read the statute to treat a corporation as a citizen of any state in which it has ever been incorporated.  Under this interpretation, the defendants at issue would be deemed to be New Hampshire citizens even though New Hampshire law treats them as foreign corporations because they were originally incorporated in New Hampshire.

The difficulty with Winnisquam's argument is that it gives the corporate citizenship provision a meaning that is inconsistent with the overarching purpose that the diversity statute was intended to serve.  Both the Constitution's diversity clause and its statutory counterpart were intended to make the federal forum available to litigants who have reason to fear that they will be treated unfairly in state court because of their status as out-of-staters.  See 13E Charles Alan Wright, Arthur R. Miller & Edward Cooper, Federal Practice and Procedure § 3601 (3d ed. 2009).  The corporate citizenship provision, which was added to the diversity statute in 1958, reduces the number of potential diversity cases that can be litigated in federal court but it has not been applied in ways that are inconsistent with the diversity statute's purpose.[1]  Winnisquam's proposed interpretation is

---

[1]  It is generally understood that the corporate citizenship provision changed prior law in two significant ways.  First, whereas prior law treated a corporation as a citizen only of its state of incorporation, the new law made a corporation a citizen of both its state of incorporation and the state where it has its principal place of business.  See 13F Charles Alan Wright, Arthur R. Miller & Edward Cooper, Federal Practice and Procedure § 3624 (3d ed. 2009).  Second, the new law abandoned the much-criticized "forum doctrine" where a corporation that brings a suit in one of several states in which it is incorporated is deemed for purposes of the lawsuit to be a citizen of only the forum state.  Under current law, a corporation is deemed to be a citizen of any state in which it is incorporated.  See id. § 3626.  Neither change is inconsistent with the diversity statute's purpose because it is reasonable to presume that corporations will not face discrimination as out-of-staters either in states where they have their principal place of business or in states where they have elected to remain incorporated.

different, however, because it would make corporations citizens of states with which they have no substantial connection when the lawsuit in question is commenced.  Such corporations clearly have the same reason to fear discrimination in state court as any other foreign corporation.  Thus, Winnisquam's proposed interpretation tends to undermine rather than further the diversity statute's manifest purpose.

While it is conceivable that Congress could have intended precisely the result that follows from Winnisquam's proposed interpretation, I find nothing in the legislative history of the corporate citizenship provision to suggest that this is so.  See S. Rep. No. 85-1830 (1958), as reprinted in 1958 U.S.C.C.A.N. 3099; H.R. Rep. No. 85-1706 (1958); Report of Committee on Jurisdiction and Venue of the Judicial Conference of the United States, as reprinted in 1958 U.S.C.C.A.N. 3114.  More importantly, adopting Winnisquam's interpretation produces irrational results because it continues to allow a corporation to change its citizenship by dissolving and reincorporating in a different state[2] while requiring that a re-domesticated

---

[2]   In Greater Development Co. of Connecticut, Inc. v. Amelung, 471 F.2d 338 (1st Cir. 1972), the First Circuit relied on the collusive joinder statute, 28 U.S.C. § 1359, to prevent a corporation from invoking diversity jurisdiction where the corporation's sole shareholder transferred the asset that was the subject of the suit to a shell corporation incorporated in a different state, dissolved the original corporation, and invoked the court's diversity jurisdiction by bringing the suit in the name of the new corporation.  The court declined to read Black

corporation remain a citizen of the state where it was originally incorporated.  I can conceive of no good reason why this kind of distinction would have been intended by Congress when it adopted the corporate citizenship provision, and I am unwilling to assume that Congress acted irrationally when other explanations are more plausible under the circumstances.

All of the available evidence suggests that when Congress adopted the corporate citizenship provision, it did not anticipate the possibility that a corporation might change its place of incorporation thorough an unusual process such as re-domestication.  Instead, when Congress chose the present perfect tense, the most reasonable explanation is that it merely reflected the drafters' assumption that once a corporation was incorporated in a particular state, it would remain incorporated in that state throughout its existence.  Since this assumption does not apply to a re-domesticated corporation, there is no good reason to enforce Winnisquam's proposed interpretation.

---

and White Taxi Cab Co. v. Brown and Yellow Taxi Cab Co., 276 U.S. 518 (1928), to require a different result.  471 F.2d at 339. However, the court confirmed that Black and White still "stands for the proposition that when a corporation conducting an on-going business transfers all its assets and its business to another corporation, and the transferor is dissolved, diversity jurisdiction will exist, even though the shareholders of the two corporations are the same, and the purpose of the transfer is to obtain diversity of citizenship." Id.  Thus, absent evidence of collusion – something that is not at issue here – it remains the law that a corporation can change its state of incorporation by dissolving in one state and incorporating in another state.

In summary, New Hampshire treats re-domestication as akin to dissolution and reincorporation in another state.  Because New Hampshire regards the defendants for all purposes as foreign corporations after re-domestication, it would not serve the purposes of the diversity statute to deny them the benefit of the statute's jurisdictional reach merely because they began their existence in New Hampshire.

Plaintiff's motion to remand (Doc. No. 13) is denied.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

October 13, 2009

cc:  John Teague, Esq.
     Michael McGrath, Esq.
     Joshua William Gardner, Esq.
     Ralph Suozzo, Esq.
     Nicole L. Cook, Esq.
     John D. Hughes, Esq.